IN THE CASE OF


UNITED STATES, Appellee

v.

Keith W. STROTHER, Corporal
U.S. Marine Corps, Appellant

No. 03-0655

Crim. App. No. 200000050

United States Court of Appeals for the Armed Forces

Argued October 20, 2004

Decided March 7, 2005

EFFRON, J., delivered the opinion of the Court, in which
GIERKE, C.J., CRAWFORD, BAKER, and ERDMANN, JJ., joined.


Counsel


For Appellant:  Lieutenant Brian L. Mizer, JAGC, USNR (argued);
Vaughan E. Taylor (on brief); Lieutenant Rebecca S. Snyder,
JAGC, USNR.

For Appellee:  Lieutenant Donald L. Palmer, JAGC, USNR (argued);
Colonel William K. Lietzau, USMC (on brief); Colonel M.E.
Finnie, USMC, and Lieutenant Frank L. Gatto, JAGC, USN.


Military Judge:  P. J. Straub


**THIS OPINION IS SUBJECT TO EDITORIAL CORRECTION BEFORE FINAL PUBLICATION**.

Judge EFFRON delivered the opinion of the Court.

At a general court-martial composed of a military judge sitting alone, Appellant was convicted, contrary to his pleas, of an indecent act and endeavoring to impede an investigation, in violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2000). He was sentenced to a bad-conduct discharge, confinement for 90 days, and reduction to E-1. The convening authority approved these results, and the Court of Criminal Appeals affirmed in an unpublished opinion.

On Appellant's petition, we granted review of the following issue:

> WHETHER THE LOWER COURT ERRED IN UPHOLDING
> THE MILITARY JUDGE'S DENIAL OF A DEFENSE
> MOTION TO REMOVE THE TRIAL COUNSEL, WHO HAD
> ACTED AS THE CASE INVESTIGATOR AND COMMAND
> LEGAL ADVISOR, WHILE IN THE POSITION OF
> STAFF JUDGE ADVOCATE.

For the reasons set forth below, we conclude that the military judge properly rejected the motion to disqualify the trial counsel, and we affirm.

## I. BACKGROUND

### A. THE PRELIMINARY INQUIRY

Appellant, a corporal, attended a farewell party for a sergeant in the unit, which was hosted by the departing member's roommate. Within weeks thereafter, rumors circulated within the command about inappropriate sexual activity at the party. The

2

unit's command sergeant major conducted an investigation and concluded that the evidence was insufficient to warrant further action. He briefed the Deputy Commander, Chief of Staff, and Staff Judge Advocate, all of whom agreed with his assessment of the evidence.

Subsequently, Major (Maj) Flexer was detailed to serve as staff judge advocate for the command. At some point, the convening authority and Maj Flexer discussed the incident that had been the subject of the prior investigation. Maj Flexer conducted a number of interviews. He also inquired into the availability of Lieutenant Colonel (LtCol) Harper, a reserve officer and an attorney in civilian life, to conduct an inquiry. LtCol Harper was ordered to conduct a preliminary inquiry, and he discussed various aspects of the case with Maj Flexer, including procedural matters, substantive issues, and investigative options. As a result of information obtained during the preliminary inquiry, Appellant was confined, and Maj Flexer represented the command during Appellant's pretrial confinement hearing.

During the course of LtCol Harper's preliminary inquiry, a new Staff Judge Advocate, Colonel (Col) Nangle, was assigned to the command, and Maj Flexer assumed other legal duties.

3

B. THE ARTICLE 32 PRETRIAL INVESTIGATION

After receiving LtCol Harper's report, the convening authority ordered a formal pretrial investigation under Article 32, UCMJ, 10 U.S.C. § 832 (2000), and appointed Maj Chenail as the Article 32 Investigating Officer. The convening authority also designated Maj Flexer as the Counsel for the Government. The Article 32 Investigating Officer conducted a hearing, reviewed documentary evidence, and recommended referral of charges against Appellant to a general court-martial.

C. TRIAL PROCEEDINGS

The convening authority referred the charges to a general court-martial. Maj Flexer was detailed to serve as trial counsel. The defense moved to disqualify Maj Flexer because of his previous participation in the investigatory stages, citing Rule for Courts-Martial (R.C.M.) 502(d)(4), which states in pertinent part that:

> No person shall act as trial counsel . . . in any case in which that person is or has been:
>
> . . .
>
> (B) An investigating officer; . . .

See also Article 27(a)(2), UCMJ, 10 U.S.C. § 827(a)(2)(2000). The defense also cited Appellant's due process right to a fair trial. See U.S. Const. amend. V.

During argument on the motion, defense counsel asserted that "the rules say that if a person has been an investigator in the same case, he cannot be trial counsel." According to defense counsel, Maj Flexer violated the rules by taking statements, speaking to witnesses, arranging for witness travel, and participating in the determination to reopen the investigation. Defense counsel relied on the record of the Article 32 proceeding and presented testimony from LtCol Harper, the officer who conducted the preliminary inquiry, concerning his interaction with trial counsel. The military judge denied the motion, concluding that the trial counsel's activity did not constitute any "overstepping" of the rules.

## D. APPELLATE CONSIDERATION

Appellant contends in the present appeal that the military judge erred in denying the motion to disqualify trial counsel. According to Appellant, Maj Flexer was disqualified as a matter of due process because his pretrial activities made him an "interested party" who could not perform prosecutorial duties with the requisite degree of neutrality. In the alternative, Appellant contends that Maj Flexer acted as an "investigating officer" as that term is used in Article 27, thereby disqualifying him from serving as trial counsel. We review the military judge's ruling on a motion to disqualify counsel under

an abuse of discretion standard.  See United States v. Hamilton, 41 M.J. 22, 27 (C.M.A. 1994).


## II. DUE PROCESS

Appellant asserts Maj Flexer was an "interested party" whose participation as a prosecutor violated Appellant's due process rights under the Supreme Court's decisions in Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787 (1987), and Marshall v. Jerrico, 446 U.S. 238 (1980).  In support of his contention, Appellant notes that Maj Flexer was responsible for reviving a dormant investigation; he provided legal advice to commanders and investigators during an earlier phase of the case; he assisted in decisions leading to grants of immunity; this was his "first big case for the command"; the pressure to secure a conviction "must have been great," particularly in view of the grants of immunity to other persons whose culpability arguably was greater; and his "performance at trial likely would have been documented on his fitness evaluation reports."

### A. DISQUALIFICATION OF A PROSECUTOR AS AN "INTERESTED PARTY"

A prosecutor will be disqualified as an "interested party" if the prosecutor has a financial or improper personal stake in the outcome of the proceeding.  The Supreme Court in Young addressed the propriety of appointing a private party's lawyer

as the prosecuting attorney in a related contempt proceeding, and held that "the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that order." 481 U.S. at 790.

The Court emphasized that a prosecuting attorney:

> is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the twofold aim of which is that guilt shall not escape nor innocence suffer.

Id. at 803 (quoting Berger v. United States, 295 U.S. 78, 88 (1935)). The Court then noted that the distinctive role of the prosecutor has been expressly recognized in the American Bar Association's Model Code of Professional Responsibility, Canon 7, Ethical Consideration 7-13 (1982). See also Model Rules of Prof'l Conduct R. 3.8 cmt. 1 (2004).

The Court discussed the conflict of interest provisions applicable to Department of Justice attorneys, including the prohibition against simultaneously representing the Government and a private party having a financial interest that could be affected by a contempt proceeding. Young, 481 U.S. at 803-04 (citations omitted). The Court determined that similar considerations should apply to a district court's appointment of

7

a special prosecutor in a contempt proceeding.  Id. at 805-09.
The Court did not express a view as to whether the appointment
constituted a violation of the due process rights of the parties
to the contempt proceeding.  Id. at 809-10, 814-15.

In Marshall v. Jerrico, the Supreme Court discussed
prosecutorial disqualification in both judicial and
administrative proceedings in the course of rejecting a due
process challenge to an administrative procedure.  446 U.S. at
242-43, 248-50.  Under the challenged procedure, the Department
of Labor imposed civil penalties for certain unlawful labor
practices, and used the proceeds to reimburse the Department for
the costs of determining violations and assessing penalties.
See id. at 239.  The Jerrico company contended that the
potential for reimbursement could distort the department's
objectivity by creating an incentive for the assistant regional
administrator to assert and assess penalties.  Id. at 241.  This
procedure violated due process, Jerrico argued, citing the
practices struck down in Tumey v. Ohio, 273 U.S. 510 (1927)
(mayor's salary tied to fines adjudicated by the mayor in a
judicial capacity), and Ward v. Village of Monroeville, 409 U.S.
57 (1972) (sums produced by mayor's court accounted for a
substantial portion of the municipality's revenue).  Jerrico,
446 U.S. at 241-42.

The Court rejected the due process argument. Id. at 243-44. The Court noted that Tumey and Ward both were based on the requirement for an adjudication by an impartial tribunal, whereas the functions performed by the assistant regional administrator "resemble those of a prosecutor more closely than those of a judge." Id. at 243. According to the Court, the due process limitations on "officials performing judicial or quasi-judicial functions . . . are not applicable to those acting in a prosecutorial or plaintiff-like capacity." Id. at 248. The Court added:

> Our legal system has traditionally accorded wide discretion to criminal prosecutors in the enforcement process . . . . Prosecutors need not be entirely neutral and detached[.] In an adversary system, they are necessarily permitted to be zealous in their enforcement of the law. The constitutional interests in accurate finding of facts and application of law, and in preserving a fair and open process for decision, are not to the same degree implicated if it is the prosecutor, and not the judge, who is offered an incentive for securing . . . penalties.

Id. at 248-49 (citations and internal quotation marks omitted). The Court emphasized, however, that the differences between prosecutors and judges did not foreclose judicial review of prosecutorial activities:

> We do not suggest . . . that the Due Process Clause imposes no limits on the partisanship of . . . prosecutors. Prosecutors are also public officials; they too must serve the public interest. In

9

> appropriate circumstances the Court has made clear that traditions of prosecutorial discretion do not immunize from judicial scrutiny cases in which the enforcement decisions of an administrator were motivated by improper factors or were otherwise contrary to law.

Id. at 249 (citations omitted).  After noting the significant burden of defending against a prosecution, the Court stated:

> A scheme injecting a personal interest, financial or otherwise, into the enforcement process may bring irrelevant or impermissible factors into the prosecutorial decision and in some contexts raise serious constitutional questions.  But the strict requirements of neutrality cannot be the same for administrative prosecutors as for judges, whose duty it is to make the final decision and whose impartiality serves as the ultimate guarantee of a fair and meaningful proceeding in our constitutional regime.

Id. at 249-50 (citations omitted).

The Court reviewed the administrative process at issue and concluded that "the influence alleged to impose bias [was] exceptionally remote."  Id. at 250.  The Court observed that the regional administrator did not have a personal financial interest in the collection of penalties and that any institutional benefit to the organization from the exercise of prosecutorial discretion was dependent upon too many contingencies.  Id. at 250-52.  In reaching this conclusion, the Court declined to "say with precision what limits there might be on a financial or personal interest of one who performs a

10

prosecutorial function . . . ." Id. at 250 (footnote omitted).

The Court added: "In particular, we need not say whether

different considerations might be held to apply if the alleged

biasing influence contributed to prosecutions against particular

persons, rather than to a general zealousness in the enforcement

process." Id. at 250 n.12.

## B. DISCUSSION -- DUE PROCESS

The factors cited by Appellant, summarized at the outset

of Part II of this opinion, do not transform a prosecutor into

an "interested party" who must be disqualified as a matter of

due process. The Supreme Court, in Young and Jerrico,

recognized that prosecutors are advisors and advocates for a

party. Young, 481 U.S. at 802-03; Jerrico, 446 U.S. at 248-49.

As such, they need not maintain the degree of neutrality

required of judges.

In civilian society, prosecutors routinely provide advice

and recommendations on the conduct of investigations, grants of

immunity, and charging decisions. The fact that such decisions

later may be challenged at trial or on appeal does not

disqualify an attorney from serving as a prosecutor as a matter

of due process. Likewise, a civilian prosecutor, whether

elected or appointed, inevitably faces the pressure of his or

her "first big case," as well as the pressure generated when

advice provided in a pretrial setting comes under challenge at trial. Such pressures, which come with the territory inhabited by prosecuting attorneys, do not transform a prosecutor into an interested party. Military prosecutors, like their civilian counterparts, are obligated to deal with such pressures in the context of the prosecutor's responsibility to ensure both that the guilty not escape and that the innocent not suffer. See Young, 481 U.S. at 803.

Appellant also asserts that Maj Flexer had a conflict of interest because he did not respond to defense discovery requests in a manner that was timely or complete. The defense litigated the issue of discovery in connection with a motion to reopen the Article 32 investigation, which was denied by the military judge. The defense has not asserted on appeal that the military judge committed prejudicial error with respect to discovery. While it is possible that prosecutorial abuse of discovery in another case would be so egregious as to demonstrate impermissible bias requiring disqualification as a matter of due process, see Jerrico, 446 U.S. at 250 n.12, this is not such a case. The interest of the trial counsel in the present case did not approach the type of conflict or bias that would have made him an "interested party" under Young and Jerrico.

12

### III. STATUTORY DISQUALIFICATION

Appellant contends that even if Maj Flexer was not disqualified as a matter of due process, he should have been disqualified in the present case as an "investigating officer" prohibited from serving as a trial counsel under Article 27(a)(2). The statute provides in pertinent part that: "[n]o person who has acted as investigating officer, military judge, or court member in any case may act later as trial counsel . . . . " Id.

In support of his contention that Maj Flexer was a statutory "investigating officer" under Article 27, Appellant notes that Maj Flexer engaged in a variety of activities more characteristic of a police officer rather than a prosecutor. According to Appellant, these activities resulted in selective prosecution and evidence produced by use of questionable investigative techniques.

### A. DEVELOPMENT OF THE "INVESTIGATING OFFICER" DISQUALIFICATION

The prohibition on an "investigating officer" serving as a prosecutor in courts-martial was first enacted in the 1948 legislation amending the Articles of War, popularly known as the Elston Act. Selective Service Act of 1948, Pub. L. No. 80-759, §§ 201-46, 62 Stat. 604, 627-44 (1948) [hereinafter Elston Act]. As originally proposed, the provision was designed to ensure

that the position of "investigating officer" would not be filled by a person having "the attitude of a prosecutor." See Hearings on H.R. 2575 to Amend the Articles of War before Subcomm. No 11, Legal, of the House Comm. on Armed Services, 80th Cong. 2036 (1947)(remarks of Rep. Charles H. Elston, Chairman, and Brigadier General Hubert D. Hoover, Assistant Judge Advocate General of the Army); H.R. Rep. No. 80-1034, at 2, 15, 18 (1947).

The Elston Act contained two pertinent provisions. The first provision, Article of War 11, stated that "no person who has acted as member, defense counsel, assistant defense counsel, or investigating officer in any case shall subsequently act in the same case as a member of the prosecution . . . ." Elston Act § 208. The second provision, Article of War 46, stated that "[n]o charge will be referred to a general court-martial for trial until after a thorough and impartial investigation thereof shall have been made," and referred to the person conducting the impartial proceeding as "the investigating officer." Elston Act § 222.

In the aftermath of the 1948 legislation, the President promulgated the Manual for Courts-Martial (MCM), U.S. Army, in 1949 (1949 MCM). Paragraph 6 of the 1949 MCM, governing appointment of the trial judge advocate (as the prosecutor was then designated), mirrored the statutory disqualification of a

person who had served as investigating officer in the same case.
With respect to the appointment of a pretrial investigating
officer under Article of War 46, paragraph 35a of the 1949 MCM
provided:  "Neither the accuser nor any officer who is expected
to become a member of the prosecution or defense upon possible
trial of the case will be designated as investigating officer."
Paragraph 41a, of the 1949 MCM, contained a parallel provision:

> The trial judge advocate must be fair and
> free from bias, prejudice, or hostility.  If
> he has acted as a member of the court,
> defense counsel, assistant defense counsel,
> or investigating officer in any case he
> shall not subsequently act in the same case
> as trial judge advocate or assistant trial
> judge advocate.

Under these provisions, the term "investigating officer" in the
Articles of War and the 1949 MCM referred to a specific
statutory position, filled by a person required to conduct an
impartial investigation prior to referral of a case to a general
court-martial.  Because the trial counsel, an advocate for a
party, would have an institutional conflict, the statute and the
1949 MCM required the position to be filled by a person who
would not prosecute the case as trial counsel.

The UCMJ, which replaced the Articles of War, as well as
the Articles for the Government of the Navy, was enacted in
1950, and took effect in 1951.  Act of May 5, 1950, Pub. L. No.
81-506, 64 Stat. 107 (1950).  The new legislation retained the

pertinent provisions of the Articles of War without substantive change. Article 32 continued the requirement for a "thorough and impartial investigation" by an "investigating officer" prior to referral of charges to a general court-martial. Article 27(a) continued the limitation that "[n]o person who has acted as investigating officer . . . in any case shall act subsequently as trial counsel . . . in the same case." See H.R. Rep. No. 81-491, at 18-20 (1949); S. Rep. No. 81-486, at 15-16 (1949).

The 1951 edition of the MCM reflected the statutory prohibition against appointing an investigating officer as trial counsel and prohibited appointment of a person to serve as an Article 32 Investigating Officer if the person was expected to become a member of the prosecution. Manual for Courts-Martial, United States, paras. 6, 34 (1951 ed.)(1951 MCM). The 1951 MCM added an expanded definition of the term "investigating officer" for purposes of various disqualifications, including disqualification of trial counsel. Id. at para. 64. The new definition included: (1) Article 32 investigating officers; and (2) "any other person who, as counsel for, or a member of, a court of inquiry, or as an investigating officer or otherwise, has conducted a personal investigation of a general matter involving the particular offense." Id. The 1951 MCM restricted the reach of the new definition of "investigating officer" by

16

providing that the definition would not disqualify "a person who, in the performance of his duties as counsel, has conducted an investigation of a particular offense or a closely related offense with a view towards prosecuting or defending it before a court-martial," except in circumstances addressed in other specified portions of the 1951 MCM. Id.

Our Court considered whether trial counsel should have been disqualified under these provisions in several cases arising in the years immediately following promulgation of the 1951 MCM. United States v. Lee concluded that an officer's informal investigation prior to preferral of charges did not disqualify that officer from serving as trial counsel in a special court-martial. 1 C.M.A. 212, 218, 2 C.M.R. 118, 124 (1952). Lee noted that there was a "distinctly arguable" interpretation of the applicable statutes under which the disqualification of an "investigating officer" only applied to an Article 32 investigating officer, but concluded that it was not necessary to rely on the statutes because paragraph 64 of the 1951 MCM employed a "broader view" of the term. Id. at 215, 2 C.M.R. at 121. The opinion concluded that an informal investigation conducted to determine whether the facts warranted preferral of charges did not transform counsel into an "investigating officer" for purposes of the Code or the broader requirements of the 1951 MCM. Id. at 218, 2 C.M.R. at 124. Accord United

17

States v. Stringer, 4 C.M.A. 494, 16 C.M.R. 68 (1954); cf. United States v. DeAngelis, 3 C.M.A. 298, 305, 12 C.M.R. 54, 61 (1953) (a staff judge advocate's interactions with investigators, in terms of consultation and advice, did not transform the judge advocate into an "investigating officer"). See also R.C.M. 303 (preliminary inquiry into reported offenses). DeAngelis emphasized the critical role of judge advocates in the administration of military justice and discipline, adding that "it would be incongruous in the extreme were we to assume that [a judge advocate] is unable to function at all unless and until charges have been preferred and investigated." 3 C.M.A. at 305, 12 C.M.R. at 61. The opinion added that participation by lawyers in pretrial matters helps to "minimize[] the risk of error arising from faulty pretrial investigations" and in reducing the number of "ill-founded charges against those subject to military law." Id., 12 C.M.R. at 61.

Subsequent to these decisions, the pertinent provisions in the 1951 MCM were retained, without substantial change, when a revised edition of the MCM was issued in 1969. Manual for Courts-Martial, United States, paras. 6a, 34a, 64 (rev. ed. 1969). The MCM was restructured completely in 1984 to adopt a rule-based format, separating binding requirements from non-binding guidance. See Manual for Courts-Martial, United States

18

United States v. Strother, No. 03-0655/MC

(2002 ed.)(2002 MCM), App. 21, Analysis of Rules for Courts-Martial at A21-1 to A21-3 (history and composition of the 1984 MCM). The 1984 MCM adopted new rules regarding the term "investigating officer" as well as disqualification of trial counsel. These new rules remain in effect in the current edition of the MCM, the 2002 MCM.

In contrast to the pre-1984 editions of the MCM, the 2002 MCM does not contain a general definition of the term "investigating officer." Instead, it uses the term "investigating officer" in connection with specific rules. R.C.M. 405, for example, implements the formal pretrial investigation procedures required by Article 32. R.C.M. 405(d)(1) uses the term "investigating officer" to describe the officer appointed under the rule to conduct the investigation. The same provision also provides expressly that "[t]he investigating officer is disqualified to act later in the same case in any other capacity." Id.

R.C.M. 912 governs challenges of panel members for cause. Under R.C.M. 912(f)(1)(F), a challenge for cause must be granted if the panel member "[h]as been an investigating officer as to any offense charged." The rule also includes a rule-specific definition applicable to challenges of panel members for cause:

> For purposes of this rule, "investigating officer" includes any person who has investigated charges under R.C.M. 405 [a

19

> formal Article 32 investigation] and any
> person who as counsel for a member of a
> court of inquiry, or otherwise personally
> has conducted an investigation of the
> general matter involving the offenses
> charged.

R.C.M. 912(i)(3).

By contrast, the rule governing qualification of counsel simply notes in pertinent part that a person may not act as trial counsel or assistant trial counsel "in any case in which that person is or has been . . . [a]n investigating officer . . . ." R.C.M. 502(d)(4). The procedure for disqualification of counsel does not refer to specific criteria, but instead notes generally that "[i]f it appears that any counsel may be disqualified, the military judge shall decide the matter and take appropriate action." R.C.M. 901(d)(3).

In summary, the initial prohibition against an investigating officer serving as trial counsel, which was implemented in the 1949 MCM, used the term "investigating officer" to describe the officer required to conduct an "impartial" investigation prior to referral of charges to a general court-martial -- the predecessor of today's Article 32 officer. The 1951 MCM provided an expanded definition that expressly included persons other than the Article 32 investigating officer. Our Court in Lee focused on the fact that the definition in the 1951 MCM was broader than the

statutory term.  1 C.M.A. at 215, 2 C.M.R. at 121.  The President, in the 1951 MCM, exercised his authority to set forth in the MCM broader rights than those established under the UCMJ.  See, e.g., United States v. Davis, 47 M.J. 484, 486 (C.M.A. 1998)(noting the authority of the President to do so unless such action would clearly contradict the express language of the UCMJ).

Having established, in paragraph 64 of the 1951 MCM, a broader definition of "investigating officer" than required by the UCMJ, the President was free in 1984 to take a more narrowly tailored approach, so long as the MCM did not set forth a provision contrary to or inconsistent with the UCMJ.  See Article 36, UCMJ, 10 U.S.C. § 836 (2000).  We note that the elimination or tailoring of a provision from the MCM does not necessarily mean that the text must be interpreted in its narrowest light, particularly if a broader interpretation is supported by judicial interpretation of the UCMJ, military custom, tradition, or parallel civilian practice.  In the present case, however, those factors are not present.  For purposes of disqualification of counsel, the President has narrowed the term "investigating officer" to its original usage – the disqualification of the officer who conducted the "impartial" investigation under the predecessor to Article 32 -- and we conclude that there is no basis in law to impose a

broader judicial construction.  We also note that that this appeal does not require us to address the question of whether there otherwise might be grounds for disqualifying trial counsel who, in the same case, served previously as a hearing officer under a service-specific regulation requiring a degree of neutrality similar to that of an "impartial" Article 32 officer. See United States v. Mann, 50 M.J. 689, 702 (A.F. Ct. Crim. App. 1999)(noting possible distinction for circumstances involving trial counsel's prior participation in a case in a quasi-judicial role).

In the case before us, trial counsel did not serve as the Article 32 investigating officer, and Appellant has not demonstrated that trial counsel's activities so departed from the normal role of a prosecutor as to make him a de facto Article 32 "investigating officer."  Cf. United States v. Payne, 3 M.J. 354 (C.M.A. 1977) (impropriety of Article 32 officer receiving ex parte advice from trial counsel).  Appellant, at trial, did not present testimony from either the Article 32 officer or the trial counsel.  In the absence of such testimony, and under the circumstances of this case, we decline to treat Appellant's speculation as to the nature of the interaction between trial counsel and the Article 32 officer as sufficient to demonstrate that trial counsel became a de facto Article 32 investigating officer.  In that regard, it is also noteworthy

that Appellant challenged the validity of the Article 32 investigation on a variety of grounds, including the actions of trial counsel, without calling either the Article 32 officer or trial counsel as witnesses.  The military judge denied the defense motion, and Appellant has not challenged that ruling on appeal.  Likewise, although Appellant attempts to raise discovery violations and selective prosecution as evidence of trial counsel's improper role as an investigating officer, Appellant has not assigned issues of law in the present case contending that there was error, much less prejudicial error, with respect to discovery or selective prosecution.

## IV. Conclusion

Appellant has not demonstrated that trial counsel was disqualified as a matter of due process or as a result of prior service in the same case as a statutory "investigating officer." The decision of the United States Navy-Marine Corps Court of Criminal Appeals is affirmed.