CRAWFORD, Judge
(dissenting):
I respectfully dissent from the majority’s expansion of Ake v. Oklahoma, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), by finding in the U.S. Constitution a right of an accused to a death penalty mitigation specialist on the defense team, without the accused first demonstrating the need for such an expert. In granting this right of “constitutional magnitude,” 61 M.J. at 298, the majority places this Court outside of the judicial mainstream. The majority fails to consider the opinions of federal and state courts regarding the right to a capital mitigation specialist, the expertise and funding provided to the defense at trial, and recent precedent from this Court, as well as the majority of the decisions by federal and state courts ruling on the law-of-the-case doctrine.
FACTS
Prior to trial, the military judge made available to the defense team six psychiatrists in the Psychiatric Department at Walter Reed Army Medical Center, including the former chief psychiatrist, who is a certified forensic psychiatrist and lawyer. Additionally, this psychiatric team would work together with consultants at the National Naval Medical Center. The defense agreed that this team of psychiatrists was more than adequate. The convening authority also assigned a noncommissioned officer (NCO) investigator and provided funding for the defense team. Later, the defense requested the services of a “mitigation specialist” because the “defense counsel lacked the experience and scientific expertise to uncover all potentially mitigating events or factors” in Appellee’s case. The defense argued “we’re not qualified to do the job of psychologists, psychiatrists, and social workers that require years of training in and of itself. To ask an attorney to compress and consolidate years of training into a few months is neighwell [sic] impossible, sir.” The military judge denied the request, relying on United States v. Loving, 41 M.J. 213, 250 (C.A.A.F.1994), which states:
While use of an analysis prepared by an independent mitigation expert is often useful, we decline to hold that such an expert is required. What is required is a reasonable investigation and competent presentation of mitigating evidence. Presentation of mitigation evidence is primarily the responsibility of counsel, not expert witnesses.
Alternatively, the defense asked the military judge to provide Appellee’s defense team with travel funds associated with building Appellee’s case. The judge granted the request for travel funds and told them to return if they did not receive the funds they wanted. Id. The defense did not return for additional funding. Based on the defense’s extensive traveling and the fact they did not seek additional funding, we may infer the defense received all the funding they needed. There simply is no evidence that funding was limited.
On appeal, two judges on the Court of Criminal Appeals (CCA) found that the military judge abused his discretion in denying a request by the defense counsel for an expert mitigation specialist, and that this denial was not harmless beyond a reasonable doubt. United States v. Kreutzer, 59 M.J. 773, 779-80 (A.Ct.Crim.App.2003). The panel unanimously found ineffectiveness of counsel during the sentencing portion of the trial. Id. at 780-85.
DISCUSSION
The Judge Advocate General certified the issue of whether that court “[1] erred when it found [2] denial of a [3] mitigation specialist to be [4] prejudicial error for findings” when it also “found that all evidence that the mitigation specialist would have discovered would not have a reasonable probability of producing a different result.” The certified issue asks us to determine whether there was a *307 “denial” of a “mitigation specialist” and, if so, whether that “denial” was “prejudicial error for findings.”
At the outset, we must determine the source of the right at issue and what standard should be applied on appeal. Only after making this determination can we examine the standard of review by which to assess whether any error may be prejudicial. If there was error, we must also determine whether that error was prejudicial for findings, and, if so, whether that holding is consistent with an established approach of assessing the case for a “reasonable probability of a different result.”
The certified issue asks us to examine the holding of the court below pertaining to findings, wherein the court stated, “defense counsel’s investigation into appellant’s mental health background fell short of reasonable professional standards,” and two of the judges agreed that this deficiency concerning expert opinion evidence would have a direct impact on the issue of mental responsibility and premeditation. Kreutzer, 59 M.J. at 784 n. 11.

Authority to Consider the Issues

The majority would hold that the Judge Advocate General has not certified the question of a right to a mitigation specialist. That issue, however, is intertwined with the issues certified in this case. Note that the CCA held that Appellee was wrongly deprived of expert assistance of a mitigation specialist to aid in the preparation of this capital case and that this was a denial of due process. Id. at 779. Affirming the CCA, the majority holds that there was a constitutional error and that “[w]hen a constitutional error is substantial and ... where that error contributes to a conviction, the conviction cannot stand.” 61 M.J. at 299.
In this case, the majority fails to consider the majority of the decisions by federal and state courts ruling on the law-of-the-case doctrine and does not recognize cases that have been decided by this Court since United States v. Grooters, 39 M.J. 269 (C.M.A.1994).[1] “Law of the case” may mean different things to different people, but it does not mean that the highest court that oversees the military justice system is bound by erroneous interpretations of law by the courts of criminal appeals.[2] Certainly, where the military judge and the court below are correct, there is no reason to reexamine the ruling. See, e.g., United States v. Daniels, 60 M.J. 69, 71 (C.A.A.F.2004). If the court below is wrong on a constitutional question, however, this Court is not bound by that ruling, and the standard of review is de novo.

No Right to a Mitigation Specialist

While the Supreme Court has not addressed whether there is a constitutional right to obtain a mitigation specialist, a majority of federal and state courts have held that a capital defendant is not entitled to a mitigation specialist as a constitutional right.[3] Ake did not hold that the defendant has a right to a capital mitigation specialist. Rather, the Supreme Court held that where there *308 is a serious question about lack of mental responsibility, that is, where the defense has made a “preliminary showing that his sanity at the time of the offense is likely to be a significant factor at trial,” the defendant is entitled to a psychiatric examination. Ake, 470 U.S. at 74, 105 S.Ct. 1087. The majority stressed that the ruling was based on the fact that the defendant’s mental condition at the time of the offense was “seriously in question.” Id. at 82, 105 S.Ct. 1087. According to the Court:
[W]hen a defendant demonstrates to a trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense.
Id. at 83, 105 S.Ct. 1087. Both the federal and state courts have resisted an expansive reading of Ake.
After Ake, the Court held that its decision should not be construed to compel the Government to provide an indigent with the assistance of an expert outside the limited circumstances of Ake. Caldwell v. Mississippi, 472 U.S. 320, 323 n. 1, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985)(“We therefore have no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type here sought,” i.e., a criminal investigator, a fingerprint expert, and a ballistic expert). Both Ake and Caldwell emphasize the minimum showing required of the defense. Like our cases, Ake sets out a balance among private interests, Government interests, and the probative value of testimony sought, noting that mental condition evidence may be crucial to the defense. But the defense must establish that fact. Both the precedent of federal and state courts and our own precedent require that the defendant show the necessity for expert assistance and that the lack of such assistance would result in a fundamentally unfair trial. See, e.g., Moore v. Kemp, 809 F.2d 702, 712 (11th Cir.1987); Gray v. Thompson, 58 F.3d 59, 66-67 (4th Cir.1995), vacated on other grounds, Gray v. Netherland, 518 U.S. 152, 116 S.Ct. 2074, 135 L.Ed.2d 457 (1996); Little v. Armontrout, 835 F.2d 1240, 1244 (8th Cir.1987).
In People v. Burt, 168 Ill.2d 49, 212 Ill. Dec. 893, 658 N.E.2d 375 (1995), the court stated that Ake does not compel the appointment of a mitigation specialist. Id. at 389 (citing People v. Lear, 143 Ill.2d 138, 157 Ill.Dec. 412, 572 N.E.2d 876 (1991)). The Supreme Court of Illinois stated that: “We have specifically held that a trial court is not constitutionally required to appoint a mitigation expert, or even an investigator, because defense counsel is capable of obtaining and presenting such information.” Id. The court noted further that “[E]ven Ake did not provide that the indigent defendant has a constitutional right to choose a particular psychiatrist or receive funds to hire his own.” Id. As in Appellee’s case, the Burt court noted that defendant was given the assistance of counsel, an investigator, and a psychologist for the purposes of securing and presenting mitigating evidence. Id. There was adequate assistance and, accordingly, no violation of the defendant’s constitutional rights in failing to appoint a mitigation specialist. Id.
Similarly, in Stewart v. Gramley, 74 F.3d 132 (7th Cir.1996),[4] the court held that counsel was not ineffective in failing to talk to the members of Stewart’s family or other potential witnesses. Id. at 135. Members of his family and other witnesses did testify on his behalf during the sentencing proceedings, but had not been interviewed in advance. Id. Failure to investigate whether he had used drugs or had a history of drug use did not show ineffectiveness. Id. What counsel must do in mitigation is “less clear,” the court said. Id. What is clear, however, is that the courts apply a Strickland standard. Id.
The Stewart court also held that a defendant does not have the right to introduce causality evidence under a Strickland analysis. Id. at 136. Prior to Stewart, the Sev *309 enth Circuit held in Kubat v. Thieret, 867 F.2d 351, 369 (7th Cir.1989), that a lawyer “must make a ‘significant effort, based on reasonable investigation and logical argument’” to discover mitigating evidence. In Stewart, however, the court clarified the rule and indicated that where there is no outward appearance that the defendant has some mental condition or impairment, counsel may surmise after talking to the defendant that such an investigation would be fruitless. 74 F.3d at 135. The court recognized that defense lawyers have limited resources and only a short period of time to prepare for sentencing. Id. Thus, they do not have to investigate the “defendant’s past with the thoroughness of a biographer.” Id.
In Stewart, the court refused to accept the causality approach towards mitigating evidence, recognizing the “slippery slope” created by the assumption that one’s past essentially influences everything. See id. at 136. Under the causality approach to analyzing childhood environment and criminal activity, the fact-finders are invited to conclude that a disadvantaged childhood environment makes individuals less legally responsible as adults. The fact-finders are asked to accept, for instance, that murderers are compelled to murder because of their past, and that they should be excused because the past may essentially influence everything they do in the future.
As discussed above, the Supreme Court has not held that there is a constitutional right to a mitigation specialist. In light of this, we should carefully distinguish this case from Wiggins v. Smith, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). Wiggins is not inconsistent with the federal and state cases that hold there is no right to a capital mitigation specialist and certainly does not overrule Loving. In Wiggins, the Supreme Court held the defense attorney’s failure to investigate the defendant’s background and present mitigating evidence concerning his difficult life constituted ineffectiveness of counsel. Id. at 515-38, 123 S.Ct. 2527. The evidence in Wiggins was “relevant to assessing defendant’s moral culpability.” Id. at 535, 123 S.Ct. 2527. “Wiggins experienced severe privation and abuse in his first six years of his life while in the custody of his alcoholic, absentee mother. He suffered physical torment, sexual molestation, and repeated rape during his subsequent years in foster care.” Id. The Court noted that lawyers are not required to present “every conceivable line of mitigating evidence” or to pursue a mitigating defense in every case. Id. at 533, 123 S.Ct. 2527. But they should discover all “reasonably available mitigating evidence.” Id. at 524, 123 S.Ct. 2527. If they decide not to pursue evidence, that should be supported by “reasonable professional judgment.” Id. at 521, 123 S.Ct. 2527. “Given both the nature and extent of the abuse petitioner suffered, [the Supreme Court found] there to be a reasonable probability that a competent attorney, aware of this history, would have introduced it at sentencing and in an admissible form.” Id. at 535, 123 S.Ct. 2527. The Court found that the record strongly suggested that counsel’s failure to investigate thoroughly the defendant’s personal history resulted from inattention. “Counsel’s decision not to expand the investigation beyond the PSI [presentence investigative report] and the DSS [Department of Social Services] record fell short of the professional standards that prevailed in Maryland [at the time of trial].” Id. at 524, 123 S.Ct. 2527. The standard remains that failure to present mitigating evidence is not per se ineffectiveness of counsel, because there may very well be tactical reasons for not introducing certain documents and testimony, for example, opening the door to inadmissible evidence or privileged information. See, e.g., United States v. Dupas, 14 M.J. 28 (C.M.A.1982).
Not only does Wiggins not change the case law as to ineffectiveness of counsel, but the facts in Wiggins are so clearly distinguishable from those in Appellee’s case that, as a legal precedent, Wiggins is inapposite. Unlike Wiggins, Appellee’s counsel was not inattentive to his background. Appellee’s counsel assembled an extensive defense team of counsel, psychiatrists, and an NCO investigator with unlimited travel funds to investigate and gather mitigating evidence. This team had the report of the investigation pursuant *310 to Article 32, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 832 (2000), and numerous psychological reports based on various tests performed on Appellee. The testing and conclusions of these experts were confidential because they were made by individuals working as members of the defense team.

Unwarranted Remedy

Rather than ordering a hearing under United States v. DuBay, 17 C.M.A. 147, 37 C.M.R. 411 (1967), ordering affidavits from defense counsel as to the reason for their decisions, or even presuming that the defense team exercised reasonable professional judgment, the majority reverses the findings.
In leaping beyond the guidance of the Supreme Court to find this right of “constitutional magnitude,” the majority relies upon “the right to present a defense, compulsory process, and due process conferred by the Constitution,” the UCMJ, and the Rules for Courts-Martial. 61 M.J. at 298. This is unfortunately consistent with this Court’s recent overreliance on due process, often without articulation of the source for that reliance. See, e.g., United States v. Richardson, 61 M.J. 113 (C.A.A.F.2005); United States v. Jones, 61 M.J. 80 (C.A.A.F.2005); United States v. Oestmann, 61 M.J. 103 (C.A.A.F.2005); United States v. Cosby, No. 05-0058, 2005 CAAF LEXIS 411 (C.A.A.F. Apr. 15, 2005); United States v. Moreno, 61 M.J. 59 (C.A.A.F.2005); United States v. Brewer, 61 M.J. 51 (C.A.A.F.2005); United States v. Strother, 60 M.J. 476 (C.A.A.F.2005). All too frequently, “due process” becomes the mantra of those who seek enforcement of certain rights when there is no specific source for those rights to which they can readily turn. The majority’s invocation of “due process” is ill placed because Appellee had both articulable rights and a highly competent team dedicated to protecting those rights. A competent defense counsel must prepare for sentencing as well as the case-in-chief. Mitigation evidence places the defendant’s crime in the social context of his or her life experiences and suggests psychologically important events that could have shaped or influenced the defendant’s criminal acts. This is particularly important where there is a pattern of early childhood trauma and maltreatment, or where there has been poverty and childhood abuses and a nexus linking those experiences with an individual’s dysfunction as an adult.
The team assembled on behalf of Appellee, the funding of that team, and the funding that could have been obtained in the future, likely provided all that was necessary to assist the defense in lending context to Appel-lee’s life experiences and the impact they had on his criminal acts.[5] The military justice system provides for open access to mitigation evidence during sentencing, subject to the effectiveness of the information and the limits imposed by rules governing admissibility. In many eases, counsel has to decide whether the past actions are mitigating evidence or aggravating evidence. The defense team was well aware of numerous statements made by Appellee while in the Sinai.[6] They were careful to avoid the admission of this material at either the findings or sentencing phases. We should not simply guess or presume that they failed to make that decision. We should avoid second-guessing counsel because of the wide latitude they must be given as to their tactical decisions, especially in light of potential rebuttal by the Government, i.e., Appellee’s prior statements or evidence to be introduced under Military Rule Evidence (M.R.E.) 404(b). The defense was very careful not to open the door for a series of statements made by Appellee while in the Sinai. These included the statements of Private First Class (PFC) Bridges, PFC Coo *311 per, Specialist (SP) Cruz, SP Harlan, Corporal Hyler, SP Estrada, Sergeant First Class Kearns, and Saul Alvarado. These statements would have been devastating evidence if admitted during the findings phase and had the potential to seal Appellee’s fate during sentencing. Similarly, the expansive testing and interviews done by the mental health team may have also resulted in opening the door to extensive statements from Appellee that would have been otherwise privileged and therefore inadmissible. See, e.g., M.R.E. 302(b).
The CCA was correct in stating that there is a relationship between a mitigation specialist and the effective assistance of counsel. However, the defense’s proffer did not satisfy what this Court has required for the appointment of expert assistance. In United States v. Gonzalez, this Court set forth a three-prong test for showing the need for expert assistance:
First, why the expert assistance is needed. Second, what would the expert assistance accomplish for the accused. Third, why is the defense counsel unable to gather and present the evidence that the expert assistant would be able to develop.
39 M.J. 459, 461 (C.M.A.1994).
Appellee’s counsel failed to satisfy Gonzalez by overlooking the team that had been appointed, making no proffer as to what this team could not accomplish that a mitigating specialist could accomplish, and making no showing that defense counsel is [in]capable of obtaining and presenting the evidence that could be obtained by a mitigation specialist. Burt, 212 Ill.Dec. 893, 658 N.E.2d at 389 (citing Lear, 157 Ill.Dec. 412, 572 N.E.2d at 880).
As we said in United States v. Kelly, 39 M.J. 235, 238 (C.M.A.1994): “[d]efense counsel are expected to educate themselves to obtain competence in defending an issue presented in a particular case,” using the primary and secondary sources that would be available prior to asking for a defense specialist. After a uniquely qualified psychiatric team was assembled, in this case the defense never indicated that they did not have available psychological records, including mental health evaluations and social service records. Additionally, while the military judge denied the request for a mitigation specialist, he did provide the alternative of government funding for the defense team’s mitigation efforts. The military judge also indicated if there was “any problems in getting the funding,” they should seek his assistance. Id. The defense never returned to the military judge for additional assistance in the way of experts, investigators, or additional attorneys.
As to the mitigation specialist, the psychiatrists from Walter Reed Army Medical Center and from the National Naval Medical Center had access to numerous psychologists and social workers to perform various tests on Appellee. Their conclusions and findings were confidential as a result of their appointment to the defense team. M.R.E. 502(b)(2). They spent numerous hours obtaining psychological testing and interviewing witnesses, including family members. Rather than recognize that a blind “shotgun” presentation of all possible mitigation evidence would waive the confidentiality of the communication between this team and defense counsel, the majority second-guesses the defense team and reverses the findings.
The drastic remedy granted by the court below and approved by the majority is beyond comparison to any federal or state case, particularly given the expansive defense team, the lack of any limitation on money or time, and the military judge’s invitation to seek the court’s assistance to obtain additional money should that become necessary. Without question, the defense team knew both the procedural and evidentiary rules critical to the presentation of an effective mitigation case. In fact, Dr. Gregory R. Lande was an editor of Principles and Practice of Military Forensic Psychiatry (1997)(along with Dr. David Armitage[7]) and *312 a former chief of the Psychiatric Department at Walter Reed Army Medical Center. If we cannot presume that the defense team here acted with Appellee’s best interests in mind, the presumption will never be available.
For all of the above reasons, I respectfully dissent from the majority’s conclusion that there was an “error of constitutional magnitude” because no mitigation specialist was appointed.

. United States v. Williams, 41 MJ. 134, 135 n. 2 (C.M.A.1994). ("The law-of-the-case doctrine does not preclude this Court, once the case has been properly granted for review, from considering an erroneous conclusion of law, made by” the court below.); United States v. Morris, 49 MJ. 227, 230 (C.A.A.F.1998) (Court limited law-of-the-case doctrine).

. It is illogical to say that an intermediate appellate court can bind a higher court. See, e.g., England v. Hospital of Good Samaritan, 14 Cal.2d 791, 97 P.2d 813, 814-15 (1939); New York Life Insurance Company v. Hosbrook, 130 Ohio St. 101, 196 N.E. 888, 890 (1935). See also Castro v. United States, 540 U.S. 375, 383-84, 124 S.Ct. 786, 157 L.Ed.2d 778 (2003)("The law-of-the-case doctrine cannot pose an insurmountable obstacle to our reaching [our] conclusion. Assuming for argument’s sake that the doctrine applies here, it simply 'expresses' common judicial 'practice'; it does not limit the courts’ power.”).

. State v. Lott, Nos. 66388, 66389, 66390, 1994 Ohio App. LEXIS 4965 at *35, 2002 WL 615012, at *13 (Ohio Ct.App. Nov. 3, 1994)(mere assertion that the assistance of an expert would be useful was an insufficient basis on which to grant relief); State v. Langley, 314 Or. 247, 839 P.2d 692, 697 (1992)(denial of mitigation investigator was not error); Commonwealth v. Reid, 537 Pa. 167, 642 A.2d 453, 457 (1994)(failure to approve funds to obtain particular psychologist as mitigation expert did not violate Ake).

. See also State v. McGuire, 80 Ohio St.3d 390, 686 N.E.2d 1112, 1120 (1997) (hiring a mitigation specialist is not a requirement of effective assistance of counsel).

. This team, in making their conclusions, considered all of the reports, including that of Dr. Robert Brown who concluded, "The impulse to commit these crimes could not have been resisted by the defendant."

. There are numerous examples. He told Private First Class Cooper: "I'll leave the guard tower, take out the radio watch guard station outside the arms room, and go into the barracks and shoot everyone inside, except for Corporal Hoy-ler, who I'd just beat pretty badly.” And he told Specialist Estrada, "I'm going to kill you” (during the fight in the Sinai).

. Dr. Armitage was part of the defense team of numerous cases. See, e.g., United States v. Gray, 51 M.J. 1, 41 (C.A.A.F.1999); Loving, 41 M.J. at 249.